Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 899 | **DATE** | 8/26/2004 |
| **CASE TITLE** | Spectra Merchandising Intl vs. Euler ACI Collection Services | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** Spectra's motion (Doc 32-1 & 32-2) for reconsideration, or in the alternative for leave to file an amended complaint, is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | AUG 27 2004 | |
| | Notified counsel by telephone. | date docketed | 35 |
| ✓ | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| SCT | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SPECTRA MERCHANDISING INTERNATIONAL, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 03 C 899 |
| EULER ACI COLLECTION SERVICES, INC., | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on Spectra Merchandising International, Inc.'s ("Spectra") motion for reconsideration or in the alternative for leave to file an amended complaint. For the reasons set forth below, the motion is denied.

## BACKGROUND

Spectra is an importer and distributer of consumer electronics who had purchased commercial credit insurance from Defendant Euler American Credit Indemnity Co. ("Euler") as early as November 2000 (under the "First Policy"). Spectra renewed its coverage when it purchased a subsequent Euler policy that insured Spectra in the event of nonpayment of accounts receivable due to the bankruptcy or protracted

default of one of Spectra's retail store buyers (the "Second Policy"). One of Spectra's buyers that was covered under both policies was Kmart. Each policy provided that coverage would only be provided for buyers which Spectra sold to on maximum terms of sale of thirty days. However, the Second Policy identified seventeen Spectra buyers that Euler had agreed to provide coverage for on sixty-day terms of sale. Even though Spectra sold to Kmart on sixty-day terms of sale, Kmart was not included among the list of buyers covered under the Second Policy on sixty-day terms. When Kmart filed for bankruptcy protection in January 2002, Spectra submitted a claim to Euler for outstanding Kmart receivables in excess of $850,000. Euler then denied the claim because Kmart's sixty-day terms of sale were in excess of the thirty-day terms provided for under the First and Second Policies.

Spectra then sued Euler seeking to reform the policies to include an endorsement for sixty-day terms of sale for Kmart. Spectra claims that the basis for this reformation was Euler sales agent Randy Gilbert's ("Gilbert") fraud or mistake – Spectra advances both theories – in not submitting Spectra's alleged requests to endorse Kmart on sixty-day terms to Euler's underwriting department. In an opinion dated June 17, 2004, we granted Euler's motion for summary judgment, finding that because there was no meeting of the minds as to Euler's intent to provide coverage for Kmart on sixty-day

terms, reformation of the contract was inappropriate.[1] In addition, that opinion granted Euler judgment on the pleadings as to Spectra's fraud claim due to Spectra's inability to plead all requisite elements of a fraud allegation. Spectra now moves us to reconsider our grant of summary judgment and judgment on the pleadings, or in the alternative to file an amended complaint.

## LEGAL STANDARD

Even though the Federal Rules of Civil Procedure ("Rules") do not officially recognize a pleading called "motion to reconsider," courts generally construe such requests as being brought under Rule 59(e) or under Rule 60(b). Walker v. Abbott Laboratories, 340 F.3d 471, 475 (7th Cir. 2003). All motions to reconsider filed within ten days of the entry of judgment, including Spectra's present motion,[2] are treated as Rule 59(e) motions. Russell v. Delco Remy Div. of Gen. Motors Corp., 51 F.3d 746, 749 (7th Cir. 1995). Rule 59(e) permits parties to file, within ten days of the entry of a judgment, a motion to reconsider the judgment. Motions for reconsideration under

---

[1] A richer factual description of this case, as well as our justifications for granting summary judgment can be found at Spectra Merchandising Int'l, Inc. v. Euler ACI Collection Services, Inc., 2004 WL 13936000 (N.D. Ill. 2004).

[2] Because a motion for reconsideration pursuant to Rule 59(e) must be filed within ten days after entry of the underlying judgment, we exclude weekends from our computation of time, making Spectra's June 30, 2004, filing of the present motion timely. Fed R. Civ. P. 6(a).

Rule 59(e) are designed "to correct manifest errors of law or fact or to present newly discovered evidence." Publishers Res., Inc. v. Walker-Davis Publications, Inc., 762 F.2d 557, 561 (7th Cir. 1985). Such motions do not give a party the opportunity to rehash old arguments or to present new arguments "that could and should have been presented to the district court prior to the judgment." Moro v. Shell Oil Co., 91 F.3d 872, 876 (7th Cir. 1996) (citing LB Credit Corp. v. Resolution Trust Corp., 49 F.3d 1263, 1267 (7th Cir. 1995)). Rather, a Rule 59(e) motion "must clearly establish either a manifest error of law or fact or must present newly discovered evidence" in order to be successful. LB Credit Corp., 49 F.3d at 1267 (quoting Federal Deposit Ins. Corp. v. Meyer, 781 F.2d 1260, 1268 (7th Cir. 1986)). The decision of whether to grant or deny a Rule 59(e) motion "is entrusted to the sound judgment of the district court." In re Prince, 85 F.3d 314, 324 (7th Cir. 1996).

## DISCUSSION

Spectra first argues that we should reconsider our decision denying reformation of the policies based on our misapprehension of deposition testimony by Davy Cheung, the Spectra official who had responsibility for purchasing Spectra's credit insurance from Euler. Cheung testified that at an October 23, 2001, meeting with Gilbert, he told Gilbert that Spectra needed coverage on its "biggest customer" changed from thirty to sixty-day terms of sale. In Footnote 3 of our opinion, we remarked that Cheung had

not "specifically identified" Kmart as needing the change in coverage. Spectra now contends that through other testimony by Cheung, his assistant Beverly Metzger, and Gilbert, we should have inferred that at the meeting in question Cheung explicitly requested that the coverage on Kmart be changed.

While we do not quarrel that other testimony throughout the record could support an inference that Gilbert knew at the meeting that Cheung wanted coverage on Kmart expanded to sixty-day terms, we do not see how such a finding would merit that our ruling be reconsidered. To begin, the footnote where we noted that Cheung did not expressly identify Kmart as the customer at issue is found in the portion of the opinion discussing whether the First Policy should be reformed. Even if Cheung's testimony had read "at the October 23 meeting, I requested that Kmart be covered on sixty-day terms," it would not change the fact that this request would have been made only one week prior to the First Policy's expiration. Though Spectra vigorously asserts that Gilbert promised to have Kmart's terms of sale amended (or at least promised to transmit the request to Euler's underwriting department for approval) on the Second Policy, Spectra makes no argument that there was any agreement that the First Policy would be amended so near in time to its expiration. Accordingly, were we to adopt Spectra's reading of Cheung's testimony, our holding as to reforming the First Policy would not change.

As to the Second Policy, Spectra fails to demonstrate that under its proffered reading of Cheung's testimony, our decision not to reform the Second Policy constituted a "manifest error of law." If we were to accept Spectra's interpretation of Cheung's testimony, the record would establish that, according to Spectra, Gilbert told Spectra that he would submit its request to have Kmart's terms of sale changed to sixty days on the Second Policy. However, such a determination would not have changed the outcome of Euler's summary judgment motion. This is because, as Spectra admits, both Cheung and Metzger knew that Gilbert lacked authority to personally increase Kmart's coverage to sixty-day terms. They may not have known that Euler's underwriting department was the source of authority in question, but Cheung and Metzger were aware that Gilbert needed permission from others at Euler before the any policy's terms could be changed.[3] As we noted with particularity in our opinion, "unless Gilbert represented that Kmart had been approved for coverage on sixty-day terms (or via an across the board change), Spectra should not have understood that its requests had been granted." Spectra, 2004 WL 1393600 at *6. Because Gilbert never

---

[3] Even if Gilbert had promised to Metzger to obtain sixty-day coverage for Kmart, she knew that Gilbert could not effectuate such a change himself. Gilbert's lack of authority, of which Spectra was aware, is what differentiates this case from Zannini v. Reliance Ins. Co. of Illinois, Inc., 590 N.E.2d 457 (Ill. 1992). Unlike Spectra's situation, the Zannini insurance agent had represented to the insured that he had authority to bind coverage on behalf of the insurer without seeking the insurer's approval for changes in coverage. Id. at 462-464.

actually represented to Spectra that Kmart had been approved for coverage on sixty-day terms, there was never an agreement on sixty-day terms for Kmart – a requisite element for insurance policy to be reformed. See Zannini, 590 N.E.2d at 465. Adopting Spectra's version of Cheung's testimony would not change this conclusion or demonstrate that our holding resulted in a manifest error of law.

Spectra next seeks reconsideration of our holding that Euler's conduct did not constitute unreasonable or vexatious conduct under Illinois law. Rather than questioning the propriety of our ruling, Spectra offers one sentence claiming that Euler did not adequately brief the issue. Since Spectra fails to challenge the legal basis of our ruling, we decline to reconsider that aspect of our opinion.

Spectra finally asks that we reconsider our determination that its amended complaint's fraud allegations contain deficiencies sufficient to support judgment on the pleadings in Euler's favor. Spectra contends that through typographical error, it failed to incorporate two key paragraphs from earlier in the complaint, that if included in the fraud count, would "constitute a separate basis for fraud not considered by the Court." However, examination of the paragraphs in question (paragraphs 18 and 19) reveals that they fail to identify the particulars of the claimed misrepresentation that are

required to support a fraud allegation.[4] Accordingly, even if they were included in the amended complaint's fraud allegation, we would have still granted Euler judgment on the pleadings because Spectra's only allegation of fraud pleaded with sufficient particularity did not contain all of the requisite elements of a fraud claim. Spectra, 2004 WL 1393600 at **6-7.

In the alternative, Spectra moves for leave to file an amended complaint to plead the particulars of its fraud claim. While Spectra's original complaint did not contain any fraud charges, during the course of discovery Spectra became aware of facts that it believed would support a fraud allegation. On February 11, 2004, Spectra was granted leave to file an amended complaint that would include a fraud count. It was the added count on the amended complaint on which we granted Euler judgment on the pleadings. Spectra now wishes to once again amend its complaint to plead specific facts which it believes would sustain a fraud allegation.

We agree with Euler's contention that Spectra's request has simply come too late in the game. The Seventh Circuit has consistently affirmed the denials of motions for leave to amend complaints in circumstances "where a plaintiff has sought leave to

---

[4] In our prior opinion, we noted that in order to properly plead an allegation of fraud, the *complaint* must specifically identify the person making the representation as well as the misrepresentation's time, place, content, and method of communication. Spectra, 2004 WL 1393600 at *6, fn 4 (citing Kennedy v. Venrock Associates, 348 F.3d 584, 593 (7th Cir. 2003)).

amend after the defendant filed a successful motion for summary judgment." Sanders v. Venture Stores, Inc. 56 F.3d 771, 774 (7th Cir. 1995). In this case, Spectra had every opportunity to include its proposed submissions when it first amended its complaint. Spectra does not base its recently proffered fraud allegations on any newly discovered evidence, but rather wants to rephrase its claims to fit the legal contours of our opinion. We find that Spectra's delay in moving to re-amend its complaint, when all of the information necessary to doing so was known to it the last time around, can be seen as "an apparent attempt to avoid the effect of summary judgment." Kleinhans v. Lisle Savings Profit Sharing Trust, 810 F.2d 618, 625 (7th Cir. 1987). As such, allowing Spectra to once again amend its complaint would unfairly prejudice Euler, who already has devoted considerable resources to successfully advancing a motion for summary judgment. We therefore deny Spectra's motion for leave to amend.

## CONCLUSION

Based on the foregoing analysis, Spectra's motion for reconsideration, or in the alternative for leave to file an amended complaint, is denied.

_____
Charles P. Kocoras
Chief Judge
United States District Court

Dated: AUG 2 6 2004